All right, welcome to the Wednesday panel. We've reconfigured. Judge Ramirez and I have pulled in the long haul, but we're glad to bring in one of our stellar jurors, Judge Dean Davis, to sit with us this week, so I'm honored to sit with both of them. We have three cases, four arguments a day, and we'll most likely just go on through them. So the first case is 2040S-50788, LIA Network v. City of Kerrville. Counsel? Good morning, Your Honor, and may it please the Court. So the United States Supreme Court in 2015 in Reed v. Town of Gilbert instructed us that content-based restrictions on speech are presumptively unconstitutional. So here, where the City of Kerrville has not even attempted to justify its content-based restrictions on speech by the burdens placed on it by strict scrutiny, that presumption of unconstitutionality is made good on. So the Canvassers and Solicitors Ordinance, that's going to be City of Kerrville Ordinance 2024-16, is globally content-based by the definitions it uses. So if we turn to the text of the ordinance, and this is going to be in Section 30-178, Canvasser means a person who attempts to make personal contact with someone at their primary residence for the primary purpose of attempting to enlist support for or against a particular religion, philosophy, ideology, political party, issue, or candidate. And they also say that distributing a handbill or flyer advertising an event or service is considered a canvasser. So that's that term. Moving on to the term solicitor, they state that a solicitor means a person who attempts to make personal contact with a resident for the primary purpose of taking or attempting to take orders for the sale of goods. And it says here that this includes a person who attempts to make personal contact for the primary purpose of requesting a contribution of funds or anything of value, or selling goods or services for educational, political, charitable, religious, or other noncommercial purposes. Let me just ask you this. Doesn't that or other purpose save this from being content-based? That's incorrect, Your Honor. What you would say is that you know what that or other means by the company that it keeps. And all of those, the company it keeps there are all content-based distinctions. But it doesn't discriminate against any other use of either soliciting or handing out the handbills. Certainly, but it states in particular that the distribution of those handbills, it focuses in on content is the issue there. But it says or other purposes. Right, right. But my point there is that a clear reading of the statute would demonstrate that it's content-based here, not content-neutral. All right. What about a case like this? So, I mean, the case that is most on point to this is Reed v. Town of Gilbert, where it states that content-based restrictions on speech are presumptively unconstitutional. Correct, but it didn't, it discriminated against other speech in the court reported that out. Right. This does not discriminate on other like speech. Respectfully, Your Honor, I disagree with that characterization. So, going from the global definitions, I think it will be of profit to us to go into the individual instantiations to demonstrate why it is content-based. So for instance, we have the hours provision, which makes it unlawful to peddle, solicit, or canvass at residences between the hours of 8 p.m. and 8 a.m. absent permission posted or an express prior invitation. So, for instance, if I wanted to knock, or not even knock on the door. Are you talking about canvassing or soliciting? Well, so it's both. I mean, the hours provision says that it makes it unlawful to peddle, solicit, or canvass. Okay, soliciting, okay. So, let's say it's 8 a.m. or 1 p.m. We're in Kerrville and I knock on someone's door and I want to talk about the merits of neoplatonism or something like that. It's unlawful for me to do that. However, if it's 8 a.m. or 1 p.m. and I would like to knock on someone's door and ask for a cup of sugar, the hours provision does not apply. It goes by the content of what I'm trying to convey there, and that determines whether or not the ordinance applies. And as such, under Reed, it's presumptively unconstitutional. Okay, well, the only, I mean, you're not dealing with all other purposes. When you say for all other purposes, then that would exempt knocking on the door. Could you repeat that? I'm not sure I understand the point. Okay. It doesn't discriminate against any other purpose that you knock on the door for. I mean, but as a matter of fact, if we read the or other purposes, then that ordinance would prevent knocking on the door for sugar, and you should ask the city in Kerbal as to whether or not they read their statute to include that, because, I mean, that's a reductio ad absurdum. If we end up reading the ordinance in that particular manner... Okay, go ahead. I don't take up any more of your time. Certainly. Thank you, Your Honor. So that's the hours provision. Let me just ask you, at the hearing before Judge Rodriguez, was there someone from the city that spoke to the purposes of the ordinance? I mean, other than the language says public safety, et cetera, and that's that issue. Was there someone, either the author of it, et cetera, who spoke to whatever the purposes were sought to be, or is that discernible only from the language in the ordinances? I believe it's only discernible from the language in the ordinances. I mean, if memory serves, although they did have people from the city speak there, I don't think they had anyone come up and testify on that. So we're only left with what the ordinance that is before the court today. Okay. So I see I'm running short on time here. So that's in relation to the hours provision. So the signs provision prohibits canvassing or soliciting at private properties displaying no solicitors, no trespassing, or signs with words of similar intent. So, again, you go back to the definitions of canvasser and solicitor, which are content-based here. And, again, this is a presumptively unconstitutional ordinance. And what I would suggest that you ask opposing counsel here in relation to these ordinances is where in the record do they end up attempting to justify these ordinances under strict scrutiny? You're not going to find it. In the event that this court agrees with us that Reed is the governing standard here, by definition, because they have not justified this under strict scrutiny, the presumption of unconstitutionality is made good on here. Again, the burden's on them in the event that you deem the statute to be content-based. So the public property provision prohibits soliciting on city streets rights of way or medians. Well, we're talking about traditional public fora there, and that's going to be Section 30-183. Again, incorporating the ordinance's definition of solicitor, it applies to those distributing handbills or flyers that advertise services, request contributions, or promote educational, political, charitable, religious, or other purposes. So, again, there is the tension that is being placed on political speech there, and what an ordinary citizen who's going to read that is going to reasonably conclude is that on areas that are traditionally grounds upon which, you know, talking about streets, street rights of way medians, wherein information is, again, it's the zenith of First Amendment protection. They can't engage in that conduct. This is blatantly unconstitutional. So as to the permits for minors provision, it bans anyone under 18 from peddling or soliciting unless a sponsor obtains a permit, supervises the minors, and supplies them with an identification badge to display. And again, whether the minor's speech is allowed hinges on its content. Regulations requiring a permit for protected speech must be narrowly tailored, and the courts provide evidence that minors pose a particular threat of fraud or intrusion of privacy. Well, on the minors, I think the court found that your clients had no standing to contest the minor provision. Is that an issue before us, or is that acknowledged? Yes, that's an issue before you. We believe that the district court was incorrect in reaching Well, there are no minors who are named as plaintiffs, so how do the parents get to, you know, raise that issue? Certainly. So there's both Because that gets speculative of what might happen, et cetera, et cetera. At least as to other people you're talking about, these are people who may want to knock on the door, but just merely saying young people in their name. But if you say it's an issue, I just wanted to be clear. Yeah, so I mean, this gets into the core of facial challenges in the First Amendment, and I see that I'm running short on time. Mr. McDonald is prepared, Mr. Tony McDonald is prepared to answer any questions you have in relation to the city's jurisdictional and justiciability arguments. Thank you. Okay, that's fine. Thank you. Well, no, I guess he'll handle the vote. Okay. May it please the court, to get to the jurisdictional issue, this court in Fair Child v. Liberty recognized that federal courts relax the prudential limitations and allow yet unharmed litigants to attack potentially overbroad statutes to prevent the statute from chilling the First Amendment rights of other parties not before the court. I think that's particularly relevant here with regard to the minors provision. You're correct, we don't have a minor who's a named party in the suit, but this court has consistently recognized that those who are in a community can bring a First Amendment facial challenge on behalf of others in the community. So, you know, as the former top-form salesman in Lolita, Texas, you know, there's kids out there who are not in court, but they are affected by this kind of regulation. I want to touch briefly on the content-based issue. Before we get there, let me ask you one other thing. You asked for both as-applied and facial having the statute declared invalid for both reasons.  Isn't it true that we first have to deal with as-applied, and it's only if we find that it's not unconstitutional as-applied, only then do we look at facial? That's correct, and that's the ordinary course, but that jurisprudence arises typically in defensive situations, you know, a criminal defendant. So, think about a circumstance where a criminal defendant says, well, this statute is unconstitutional as-applied to me, and the court says, no, we think it's constitutional as-applied to you. They can still then argue, well, it's unconstitutional as-applied to a sufficient number of other people, and therefore it's unconstitutional generally and unconstitutional. We've got to deal with the as-applied first. Typically, but I would disagree with that in this case because the relief requested is, or we're asking for an injunction against enforcement for it in the entire community. And so, again, as the court recognized in Fairchild and with the facial standing, where you're asking for an injunction, it's not a, I wouldn't call it a universal injunction, we're not nationwide coast-to-coast here, but we're talking about an injunction that's for the benefit- But if you can't get it as-applied, you certainly can't get it facial. Well, see, that's not true in the First Amendment context because even if it were constitutional as-applied to these particular litigants, it would still be unconstitutional if there were a sufficient number of unconstitutional applications. So, for instance, we talk about LIA Network distributing voter guides. And one of the very distinct harms that you've seen here is they previously distributed 7,000 voter guides. Because of this ordinance, they have volunteers who are afraid to go out and participate because they're afraid they're going to be fined. That's gone down to- Our statute before.  But this impacts activity of a political nature. And so, with the voter guides not being distributed, it went from 7,000 to 4,500, which is a big impact in a local election where tens of votes. So, that's a distinct harm. But this statute actually applies. It literally would apply if I went uninvited in the city of Kerrville at 7.30 on a Sunday morning to invite my grandmother to go to church with me, this statute prevents that activity. And so, that's something that's more theoretical. But that's the things that this court should look at in a First Amendment challenge. I wanted to talk briefly about the content-based issue. You recognize the other non-commercial purposes phrase in the solicitor definition. That catch-all is not found in the canvasser's definition. So, the canvasser's definition, which reaches even broader activity, doesn't have that issue. The other thing I would say is if you look to the definition about distributing a handbill or flyer, this would require the government to look at what the content of that handbill or flyer is. Even beyond whether it's capturing all other purposes, which means it just makes all of this list a melody, you still would have to look to the content of that handbill or flyer to find out whether it's advertising a service. And I don't know if that means a church service or, you know, what does that mean? Requesting a contribution from... You could read the statute basically to prohibit handing out any handbill. Well, and it's interesting. An ordinance that said something like that, that was more broad and content-neutral, would be under intermediate scrutiny. Well, that's right. So, all I'm saying is one way you can read it is the as-others, in effect, makes it illegal to distribute any handbill of any nature. I don't think that that's what... You have to get in the text of it. And I think if you get in the text, that's not what is here. And regardless, if we're there, we're under intermediate scrutiny. There's no evidence in there tailoring. The statute fails regardless. I'm happy to answer questions or I'll be up in rebuttal. All right. Sir, you've reserved your rebuttal time. Yes, please. Thank you. Mr. Brant. May it please the court, Tom Brant for the city of Kerrville. I'd like to begin in a strange place. The Watchtower case, which I've tried to distinguish as not controlling, was the case that the district court found to be controlling. And in it, the Judge Rodriguez said that the Watchtower case, that this situation in Kerrville was similar to the Watchtower case because we didn't have... It was too broad. We didn't have enough tailoring. Dial back just a second, at least in your first minute, and just kind of give a little more context in terms of... Not to cut you off, but, you know... Sir. Yes. Was the statute enacted after there had been certain activity and the goal was to regulate that, et cetera, et cetera? There had been a long history, Your Honor. It's in the whereas clauses that were adopted as legislative findings of fact, including whereas clauses said that they'd been regulating peddlers and solicitors since 1965, I believe, in various iterations along the way. And so this has been a longstanding regulation that was adopted and amended to be more tailored. And in that activity, one of the facts that we found, as a matter of legislative fact, was that 27% of the population of Kerrville is age 65 or above. The state average is 13.4. It's twice, more than twice, as many percentage-wise elderly. And that is something that's fairly unique to the city of Kerrville, which also supports the idea of quiet enjoyment of your home, not wanting to be disturbed, and particularly the solicitation for funds. That part, and that's where we think we crafted a narrowly tailored ordinance to deal with the situation of people having a right to quiet enjoyment of their homes. But we also recognize there's constitutional rights that need to be weighed on the other side, people having a right to free expression. So we crafted this ordinance to handle that situation. And one of the things that we did was we defined canvassers and we defined solicitors. And the essence of the definition is money. One is primarily a commercial activity for money, or a political activity for money, where they're seeking a donation or seeking to sell something. That's a solicitor. Well, it's primarily, but not the only thing. Not the only thing, but the primary intent of the person is to obtain money from the person that they're knocking on the door. The canvassers, on the other hand, are primarily, I mean, they are not, they're excluded from the regulation of the ordinance because they're not primarily looking for money. They're just, and we've said this in open court and in our briefing, that the canvassers are defined differently and that just because there is an incidental effort to get money, for example, if the script is I'm supporting Joe Smith for governor, I want your support. I want to know, talk to you about the issues that are in this campaign. And then at the end, if you find a kindred spirit as somebody who says, oh, yes, I like Joe Smith. Then you say, hey, would you consider giving some money to his cause? That is a speculative kind of down the tree script, right? You don't start with the, I want money for Joe Smith. You start with, are you involved in the political process? Do you have any opinions about it? So what we're doing, we try to do a reasonable carve out. We're not asking people to get a permit to talk about politics and knock on doors. We are going to regulate them for time, place, and manner. Let me just ask you about the hours provision for canvassing, not soliciting canvassing. Now, as I read the ordinance, the definition of canvassers embedded in the order and in the hours provision, it would place a penalty on someone who knocks on the door during the prohibited hours, but only to talk about the matters that are set out in the ordinance. It's politics and religion and two or three other things. So if you knock on the door for some other reason, you don't violate the ordinance. Now, why is that not content-based? It's not content-based because it's an effort to, as a practical matter, make categories of conversations that say, hey, I just want to come over and borrow a cup of sugar, that kind of a conversation between neighbors, or I want to talk about something that we have in common, or that sort of thing. It's not something that is so inherently a problem that has historically been something we've had to deal with. Let me just read you this brief definition and read, you know, read. The government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed. Now, why doesn't that just fit this like a glove? Well, it doesn't, Your Honor, because in this situation under Watchtower and the cases following, including Moody, but Watchtower talks about the legitimate competing constitutional values at stake here. There's the right to speak, and there's also the right to be left alone and have fun doing it. Well, wasn't that case dealing with facial talent? Yes, and this is actually the situation. Well, let's talk about as applied to this statute. So if, I mean, it's, how do you justify not applying strict scrutiny to that hours provision? To the hours provision? Yeah, if it's, in other words, if it's content-based, then strict scrutiny applies, doesn't it? If it's content-based, yes, but the district court did not find that that hours provision. I know they didn't, and I'm asking you why it's not. It's not because the... Under the definition I just read to you, why isn't it content-based? Because it has to do with the regulation of the activity. The primary purpose of the activity is sales, not free speech. That's what's being regulated. So then after hours, people, it's a reasonable position to say that no one can talk to somebody after hours. But that's not the way the regulation is written. The canvassing is knock on the door to speak to someone about one of these subjects. Well, again, I think that it doesn't apply because of the common sense notion that the government is not supposed to be regulating everything. It's not supposed to be regulating people's private conversations. What we're trying to achieve is a legitimate goal of saying somebody wants to, after hours, they want to go to bed, they don't want to be disturbed. They don't want to get up from watching TV or whatever it is. But we're not going to criminalize or penalize people for just talking after hours. I think it's just common sense. And I think that when you talk about Reid, Reid was not even mentioned once by the district court. Reid was not addressed at all. What he should have addressed, what he did address was Watchtower, but what he failed to address is the Moody. This is Moody versus Netflix or NetChoice is the decision that came out for facial constitutional First Amendment challenges. And even if even if I were to say, OK, you've got me, judge, that one could be considered constitutional. I'm not conceding that. But even if I were, Moody would say, well, let's look at the whole sweep of this ordinance. And let's let's not speculate about a lot of possibilities out there. Moody deals with facial challenge. And I'll ask you this. Ordinarily, and I think I don't think I've seen a case that found that the statute was OK. In particular for the particular plaintiffs as applied and gone on and even considered a facial challenge. Well, that's correct. I don't know of any case that has done that either. And I think that if you can't defend it on the as applied, you can't get to the facial challenge. Well, that's true. And I don't think we should have had an injunction against us because what the plaintiffs said on the record in court was this case lives and dies on the facial challenge. That was their emphasis. That's what plaintiffs counsel said before the court. And there was no real attempt to say it has been applied because it hadn't. Well, their memos to the district court certainly dealt with as applied. Well, Your Honor, there was no evidence in the record that it had been applied. It was only evidence about fear of how it might be applied. That was the speculation that Moody said we shouldn't be getting into. It really put a damper on facial challenges. Well, we had plenty of evidence that two or three plaintiffs or witnesses said we've been generating this kind of speech. We've been doing canvassing. We want to continue it. And we would, but for that statute. So the statute chilled the speech. Well, and we set an open record. And in the ordinance itself, the canvassing was not regulated. So we weren't going to be enforcing any permitting ordinance against someone because if they were canvassing, as long as the primary purpose of their canvassing was not solicitation for money, if it was an incidental purpose. Where did you say that? In the definitions. Not for canvassing. Yes, in canvassing, the definition, it says that even if incidental to such support, the canvasser accepts the donation for money for or against such cause. So that's a long sentence there. Canvassing means a person who attempts to make a personal contact with a resident without invitation for the primary purpose of attempting to elicit support for or against, and then it names politics, religion, and those items. And then it says, comma, even if incidental to such purpose, the canvasser accepts the donation for money for or against such cause. Yeah, that's an incidental purpose of it. No, that's an incidental exception. And what you're saying is the primary driver here is commercial activity versus canvassing for political activity. And if their primary purpose, and it's been equivocal by the plaintiffs in the record about what their primary incidental purpose is. They've fudged on that. But in the regulation of solicitors, solicitation. Yeah, we were talking about canvassing now. Yes, but I'm saying you only read them together to understand the distinction. You read those two statutes and you realize, aha, here's what the city is doing. If they're hassling people for money to sell something or try to get them to open their pocketbook, then we're going to regulate that. If they're just out there doing their first amendment right of saying, I want you to support my candidate, and they're not. Only incidentally would they be asking for money. If it's primarily, I'm asking for you to vote for my candidate, then that would be something that would be accepted. It wouldn't be part of the permitting process. Did you craft this language? I did not. You know, I say a lot of times when we get a statute up here, the guy that drafted the thing ought to be here arguing it. Well, perhaps, no, to be more accurate, there were amendments that we made, and yes, we were part of that. But I don't recall all the details of that. During the pendency of the litigation, we did reform and amend to try to make it even clearer. Well, I mean, the mere fact that you're here, and this exhaustive hearing before Judge Rodriguez would somewhat signal it's far from clear. You're really going through linguistics to get us to understand what the even if incidental means or doesn't mean. Vis-a-vis, you know, what it says. I mean, on the plain language, you say the city's purpose was one thing, but incidental is something else. They bring a challenge. You say, well, the burden is on them to do this and that, but it's the city's statute. Let me ask you, in the record, the question I asked Council Opposite, was there testimony of what the purpose was? I know the language says public safety or something to that effect. But was the redactor of the ordinance of the language, was it testimony that it was designed for whatever, whatever? I mean, you said to us about, you know, it being a bedroom community, et cetera, et cetera. There was testimony about that and about how we were trying to protect people in the community. There was testimony that reinforced the whereas clauses, which became legislative findings of fact in Section 1. All the whereas clauses, which include the balancing I'm talking about between the rights of both sides, right of people to be quiet and join up, and right of people to have free speech, those were specifically referenced in the whereas clauses and then incorporated as legislative findings of fact, including the fact that there were so many elderly in the city, twice the state average. So those were in there. And what I'm trying to address is the one problem for me is I'm appealing, as a cross appellate, I'm appealing the permitting provision being enjoined. And I'm also talking about the reasoning for enjoining it. I think this is a facial challenge, full stop. I don't think there is anything but a weak attempt at it as applied at best. Well, the Judicial Court found that the statute swept too broadly, in effect, right? Yes. And so he enjoined that and said, well, the plaintiffs would like to succeed on that. And on the other hand, he said they hadn't shown a likelihood of success with respect to time, place, et cetera, et cetera. So you're cross appealing on the injunction that was issued, right? The injunction, part of it was granted, part of it was not. So on the hours, signs, public property provision, those all were not enjoined. The only provision that was enjoined was the permitting. So that's why I'm addressing the permitting. And in addressing the hours, Judge Davis, I think you need to look at it in terms of Moody versus Net Choice to say, okay, then if your opinion is that that is a content-based restriction, then you have to look at, on balance, the legitimate sweep of the ordinance. Well, if I was looking at a facial challenge, I'd have to do that, but not for an as-applied challenge. Right, but there hasn't been a substantial as-applied challenge because they've never said that it's been applied to them. Well, if they threatened by it and it was chilled their speech, that's enough. Well, Your Honor, that's speculative about what we've been saying, that this doesn't apply to you. And they're saying, well, we don't understand that, so we're chilled. I think it's a little bit of a not applied at all. Well, it was not in the record that you agreed you're not going to apply it. We've said that repeatedly on the record. Where? During this hearing. No, I didn't agree. Well, I will find the site and give it to you where it's in the record because we said it in open court, and I didn't expect that that would be an issue. I thought that would be something that would be admitted by all. If I could, please, go back to Watchtower because you're asking a question, Judge Stewart, about the judge found this to be too broad. Well, look at, particularly I would point to you to Watchtower 536 U.S. 150 Act 165. There you'll see it says, the text of the village's, that's in Watchtower, the text of the village's ordinance prohibits canvassers from going on private property for the purpose of explaining or promoting any cause unless they receive a permit and the resident could not opt in for a no solicitation sign. Here's the point. Had this provision been construed to apply only to commercial activities and the solicitation of funds, arguably the ordinance would have been tailored to the village's interest in protecting the privacy of its residents and preventing fraud. Watchtower is the peg that the district court relied on for saying that our ordinance was too broad. Watchtower specifically says, if you carve out canvassing, which we did, then you're all right. We're following directly from the Supreme Court's decision that had to do with an ordinance of this type, but we're not stopping there. I think Watchtower is the answer, even if it's not the right question. It was the peg upon which the district court hung its hat. I say it's not a good peg to hang on, but if you hang it on that peg, then you're going to have to live with the language of narrowing on page 165 of that opinion. And in that, you'll see we have in good faith, whether artfully or inartfully, but we have in good faith tried to fashion a ordinance which will address the very thing that Watchtower was talking about. So we make this distinction. I'm speaking only for myself, but what would your response be if at least this judge were prone to remand this to the district court? A, to address the as applied, the facial Watchtower net choice, et cetera, et cetera, rather than us trying to discern this squirrelly language, which you're taking 15 minutes to explain. You're cross appealing that he said it was too broad. They're appealing the other provisions. Intuitively, this smacks to me of a remand back to the district court, which I said I'm speaking only for myself, but it just smacks of there's something that more needs to happen in the district court as opposed to us trying to untangle what was meant, what was said. They say they are bringing these challenges. The only thing to me doesn't seem heavily in dispute. I mean, the court found that the minors, that there was no standing to bring the minors challenge because there weren't minors. You heard counsel officer's response, but that doesn't seem to be the biggest issue in the case, but you're arguing, okay, he doesn't apply Watchtower. They're arguing net choice came out. The district court didn't do the balancing. We have arguments about whether strict scrutiny or intermediate scrutiny is allowed. The district court said it was upon a liberal methodology and screamed about that, but then he gives a thorough order, and then it's up to you on appeal. Do you follow me? Yes, Your Honor. I don't have much time. Well, you got time to answer my question. Good. I'll answer that question. I'm just putting it out there. I'm not saying what the panel would do. I'm just saying hearing the arguments from each side with me is less than lucid on some of these issues, and they're very important claims at stake. We want to get it right, but the district court says certain things in his order and so forth, and you all have raised certain cases, particularly Moody v. Net choice. There's Davis' issue about Reed, et cetera. Just not saying that's what the panel would do, but this is your shot. Now, that's the same thing to counsel opposite when they get up there. What would a remand get us, or is that a vain and useless act? If all that is done is a remand, I think that would be improper because that would leave the injunction in place. I've tried to explain to the court. Well, I didn't say all. I just was giving you sort of the cliff notes. Okay. Then I understand that some of these things need to be looked at closer. It may be appropriate to do so, but what I'm asking this court to do is to reverse the order of injunction to allow us to go forward. Then there might be an as-applied challenge that's legitimate because we haven't applied it. If it's lifted, the injunction is gone, then it can be remanded for the district court to look more closely at the standing issues, to look more closely at the Moody v. Net choice issues, to look more closely at the issue that I raised about Watchtower and the narrow tailoring. Yes, I think that, honestly, the judge had two complex ordinances in front of him at this time that we've moved the election hearing, so sending it back on those. But I would urge this court not to just send it back and keep the injunction in place. No, there's too many warts on this to allow this injunction to continue. All right. And go look back at it. I got you. I wasn't asking you to abandon any positions taken in the brief just while you were standing there. I just thought I'd ask. No harm in asking. That's a reasonable ask. No harm in asking from up here. Anyway, all right. Just do your job like me. Absolutely. All right. Thank you, counsel. All right. Back to you, Mr. McDonald for both. May it please the court. I wanted to go to this issue of remand. This is an interlocutory appeal of motion for preliminary injunction. L. Rod B. Burns tells us that a constitutional harm, harm to free speech rights, is an immediate irreparable harm. So it is incumbent on this panel, this court, to act to protect the rights not only of my clients, of LIA network members, but of the citizens of Kerrville from an unconstitutional ordinance. I wanted to touch briefly. The district court found, and this is in ROA 1318, the defendant has not presented the court with any evidence as to how the permitting provision is narrowly tailored to achieving its stated interests. Here we have, regardless, obviously, it's a content-based policy. That means strict scrutiny applies. But even if the court were to say, we're not going to apply strict scrutiny, we're going to apply intermediate scrutiny. Bonta, 2019 from the Supreme Court, tells us that intermediate scrutiny still has teeth, and they still have to show narrow tailoring, and here you have no evidence of narrow tailoring. So it fails regardless of what bucket we fall into in terms of tiers of scrutiny. Well, counsel, on the record, says there was no problem with the traffic, didn't he? Oh, excuse me, I didn't hear that. Counsel said on the record this didn't create a problem with the traffic and the scrutiny. There wasn't really evidence of, again, there's no evidence of the narrow tailoring, so we didn't really get evidence of that. The district court actually discounted the public safety argument, and so the only sufficient reason that the district court found was the peace and solitude kind of argument. Obviously, people have an interest in that, but we have trespassing and harassment laws and general laws of general applicability that protect those sorts of things. We don't have, and what this court and the Supreme Court and our Constitution doesn't allow, are content-based restrictions on these kinds of things for the purposes of peace and solicitude. It occurred to me, I took my four-year-old daughter trick-treating on Friday for the first time, and we were out pretty late. We started at the top of the hill, and we came down to the bottom of the hill, and I think it was after 8, we were still out knocking on a couple neighbors' doors, and I don't live in Kerrville, I live in New Fort Worth, but it occurred to me that that activity, trick-treating, was probably legal in the city of Kerrville under this ordinance, but had my daughter said, well, would you like to come to church with me, it would be illegal, and not just illegal, a strict liability offense. I also want to note that there's a lot of conversation in this case, we keep coming back to the idea of knocking on doors, but that's not what this ordinance says. It's not written with any precision. It actually talks about making contact with people at their residence, so you literally have an ordinance here that would say you're walking down the street, there's a no solicitor sign on the door, the man is out in the driveway washing his car, and you can come up and talk to him and say trick-or-treat, but you can't come up and say, hey, do you want to come to church with me, or hey, do you want to support so-and-so for city council? We have here, carried with the case, a motion for injunction pending appeal. We would ask the court to render a preliminary injunction, but if the court is going to take its time with the opinion, we would ask this court to issue an injunction pending appeal. We have here, what the Supreme Court has said, is we have a law that is unconstitutional, presumptively unconstitutional. The burden was on the city to show compelling interest, or sufficient interest if you're under intermediate scrutiny, and narrow tailoring. District Court found there was no narrow tailoring, so even to any interest, it didn't meet its burden. And so, both as applied, the remedy for these clients, the two individuals and the organization and its members, that both that and facially, for the protection of all the people, including the kiddos who are out selling Girl Scout cookies, who aren't plaintiffs in this case, this court should act and should issue an injunction pending appeal, and should render a preliminary injunction. Does that have to answer any other questions? Thank you. All right. Thank you, counsel. Thank you, counsel, for both sides. Very interesting case, to put it mildly. We'll take it under submission.